# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-12-168-S** |
| | § | |
| **DARREN DAVID CHAKER,** | § | |
| **a/k/a  DARREN Del NERO** | § | |
| **a/k/a DARRIN SHACKLER** | § | |
| | § | |
| **DEFENDANT** | § | |

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY

The United States of America, by and through the United States Attorney for the Southern District of Texas, Kenneth Magidson and Assistant United States Attorneys Carolyn Ferko and Sharad S. Khandelwal, hereby files this motion in limine respectfully requesting that the Court exclude both of the defendant's proffered expert witnesses in this case: (1) Erin E. Jones, a bankruptcy attorney; and (2) Sanford Dow, a real estate lawyer.  All of the opinions offered by these attorneys are inadmissible legal conclusions.  Furthermore, these experts should be prohibited from testifying about the defendant's state of mind.  Moreover, many of their opinions which the defendant seeks to admit concern issues that are irrelevant

1

or offer opinions that are unreliable.  Finally, the Court should exercise its

discretion and find that neither witness is qualified to testify as a legal expert.

## **BACKGROUND**

The central thesis of the government's case is that the defendant, Darren

Chaker, lied under oath while testifying to two federal bankruptcy judges.  The

defendant initially filed for bankruptcy in December 2006 in order to prevent, or at

least seriously delay, foreclosure on a house located at 11307 Pampass Pass,

Houston, Texas 77095.  The defendant had purchased this house in September

2004, claiming it to be his primary residence, but about a year later transferred the

house to a company he created and ran called Core Capital, LLP.  At this same

time, the defendant began leasing out the Pampass Pass house to various tenants.

A few months later, in December 2005, the defendant decided to stop

making mortgage payments on the Pampass Pass house, and the mortgage

company began to foreclose on the house.

Accordingly, when the defendant *first* filed for bankruptcy in December

2006, he did so primarily to stop foreclose on the house.  Due to a procedural rule

in bankruptcy proceedings, this first bankruptcy filing automatically stayed the

foreclosure proceedings for the length of the bankruptcy case.  However, the

defendant did not follow up on his initial bankruptcy petition, and this first case was dismissed in February 2007.

Foreclosure proceedings resumed, and so the defendant filed a ***second*** bankruptcy petition in March 2007. Because of the procedural rule in bankruptcy proceedings, a second petition only automatically stays the foreclosure proceedings for thirty days unless the bankruptcy judge agrees to extend the stay. Accordingly, the defendant testified on March 26, 2007 before the Hon. Jeff Bohm. During his sworn testimony, the defendant testified that the Pampass Pass house had been rented out "[s]ince the first week of January [2007], just after I filed bankruptcy." *See* 3/26/07 Tr. at 14:7-9 (attached as Exhibit A). When asked whether he had "ever rented the property out prior to January," the defendant simply answered, under oath: "No." *See id.* at 14:15-16.

This was, quite simply, not true. The government anticipates that the evidence will show that the defendant had in fact rented out the property both before and after January 2007, and in fact was involved in a lawsuit with one of his former pre-January 2007 tenants at the exact time he testified under oath before Judge Bohm.

Judge Bohm eventually denied the defendant's bankruptcy motion to extend the stay, finding that the case was not filed in good faith and that either the

defendant had falsely testified at the hearing or submitted false filings.  *See id.* at 29:4-19.

The defendant subsequently dismissed this second bankruptcy petition, and foreclosure proceedings resumed in August 2007.  Accordingly, the defendant filed a ***third*** bankruptcy petition.  This time, the defendant filed for Chapter 11 bankruptcy on behalf of Core Capital.  Because the name of the debtor on the bankruptcy petition was new, the full stay on foreclosure for the length of the bankruptcy case was automatically instituted.  Additionally, because the debtor's name was different, the case was randomly assigned to Hon. Marvin Isgur.

During a hearing on the third bankruptcy petition, the defendant again testified under oath before Judge Isgur.  The defendant was asked whether he had "maintain[ed] that the property was your homestead" when he had earlier testified before Judge Bohm.  *See* 8/22/07 Tr. at 22:6-7 (attached as Exhibit B).  The defendant said he did not recall every question that has been asked of him, and asked to see the transcript.  *See id*. at 22:8-12.  The defendant was then asked if he had told Judge Isgur "about Core Capital, LLC?" *See id*. at 22:12.   The defendant answered that "if I was asked the question if its rented or who owns it, yeah, absolutely I would have said that's Core Capitol." *See id*. at 22:12-15.  Again, this

was not true.  The defendant never disclosed the existence of Core Capital to Judge

Bohm, much less that Core Capital had an interest in the Pampass Pass house.

Judge Isgur subsequently found that the defendant had lied, and referred the

case to the U.S. Attorney's Office for the Southern District of Texas for

prosecution.  *See id*. at 32:9-10 ("Mr. Chaker, I think you sat up here and lied

about everything.").

## DISCUSSION

## I.  THE COURT SHOULD NOT ALLOW THE DEFENDANT'S EXPERT WITNESSES TO TESTIFY TO THEIR LEGAL OPINIONS

In this case about whether the defendant lied under oath before two

bankruptcy judges, the government could have noticed and attempted to put on as

purported expert witnesses in its case in chief the two federal judges to whom the

defendant lied.  The government expects that both Judge Bohm and Isgur would

have testified that the defendant had lied to them, and that these lies were material.

Additionally, the government could have bolstered their testimony by asking the

Court to admit the portions of the hearings (in both audio and written form) where

each judge separately found that the defendant had lied to them.

The government has consciously chosen not to do this.  The government

recognizes that Rule 704 of the Federal Rules of Evidence does not permit experts

to testify as to legal conclusions – in this case, that the defendant had lied to them

under oath and that these lies were material.[1]  Although Rule 704(a) ostensibly

provides that "[a]n opinion is not objectionable just because it embraces an

ultimate issue," *see* F.R.E. 704(a), the Fifth Circuit has squarely held that:

> Rule 704, however, does not open the door to all opinions.  The
> Advisory Committee notes make it clear that questions which merely
> allow the witness to tell the jury what result to reach are not permitted.
> ***Nor is the rule intended to allow a witness to give legal conclusions.***

*See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (emphasis

added); *see also Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In

re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986)

("Stated more directly, the trial judge ought to insist that a proffered expert can

bring to the jury more than the lawyers can offer in argument." )).

Indeed, one circuit court has explicitly prevented a bankruptcy judge and

bankruptcy attorneys from offering their "expert" opinions on what the law is.  In

*United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984), the Hon. John F. Ray,

Jr., a federal bankruptcy judge in the Northern District of Ohio, appointed the

---

[1] Actually, the Fifth Circuit embraced this view even before Rule 704 was
written. In *Huff v. United States*, 273 F.2d 56, 61 (5th Cir. 1959), the Fifth Circuit
held that parties "cannot in this manner be permitted to substitute its witness for
the Court in charging the jury as to the applicable law."  After Rule 704 was
issued, the Fifth Circuit found that *Huff* still applied.  *See United States v. Milton*,
555 F.2d 1198, 1203 (5th Cir. 1977) (citing *Huff*) ("By the same token, however,
courts must remain vigilant against the admission of legal conclusions, and an
expert witness may not substitute for the court in charging the jury regarding the
applicable law.").

defendant as a receiver of a bankruptcy estate.  *See id*. at 385-86.  While serving in this role, the defendant was alleged to have embezzled money from the estate.  *See id.*  After the defendant was federally indicted for embezzlement, the defendant argued at trial that he should be acquitted because the money he was alleged to have embezzled was simply his fee.  Accordingly, at trial, the government called Judge Ray -- as well as several bankruptcy attorneys -- to testify as to their opinion of the law – specifically that the law does not authorize a fee to receivers.  *See id*. at 386-88.  Over the defendant's objection, the trial court permitted this testimony, and the defendant was convicted.  *See id*.  The Sixth Circuit reversed, and found that the trial court had abused its discretion in permitting this testimony.  *See id*. Citing Rule 704, the Sixth Circuit held "[i]t is the function of the trial judge to determine the law of the case. It is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles."  *Id*. at 387.

Following this well established principle, in this case the government has not sought to admit the testimony of either Judge Bohm or Judge Isgur to testify that the defendant perjured himself under oath and that this lie was material.[2]

---

[2] The government has separately filed a motion seeking to admit the lay testimony of the bankruptcy attorneys involved in the defendant's three bankruptcy filings at issue in this case.  *See* Docket #81.  As we articulated in that motion, however, the government does not seek to admit their legal conclusions, but rather to explain their own observations of those bankruptcy proceedings and to provide general background on how bankruptcy operates.

The defendant, however, has not been similarly restrained.  So far as the government understands it, the defense in this case seems to be to the blame the defendant's attorney (even though the defendant is charged with personally lying under oath) and to claim that he did not lie when he said he had no renters prior to January 2007 because he did not own Pampass Pass at all (even though he had testified about his post-January 2007 renters a few moments before).  To support these claims, the defendant has noticed two attorneys to testify as expert witnesses as to their opinions of law.  First, the defendant seeks to have Erin Jones, a bankruptcy attorney otherwise uninvolved in this case, to testify to her opinion about whether the defendant's bankruptcy attorney committed malpractice (she says yes), whether the defendant falsely testified (she says no), and whether this testimony was material (she says no).  Second, the defendant seeks to have Stanford Dow, a real estate attorney, to testify as to whether the defendant was the legal owner of the Pampass Pass house when he testified (he says no).

The government submits that all of this is simply legal argument, and that the Court should use its discretion to exclude these defense expert witnesses.  *See General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997) (trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion).  If the defense counsel wishes to make these arguments himself, the government

8

respectfully submits that he can do so in his closing argument to the jury subject to the Court's rulings about what the law is.  Rule 704 and well-settled case law, however, prevents him (or the government) from seeking to offer these legal arguments under the guise of expert testimony.[3]

In the alternative, if the Court believes such testimony is in fact permitted, the government hereby notices as expert witness for either its case-in-chief or its rebuttal case: (1) Judge Bohm; (2) Judge Isgur; (3-4) Darren Peake and Nancy Holley, the two assistant U.S. bankruptcy trustees involved in the defendant's bankruptcy filings; and (5) Branch Sheppard, the mortgage company's bankruptcy attorney who filed the foreclosure for the Pampass Pass house and who cross-examined the defendant.  The government submits that all of these witnesses will

---

[3]  Having an attorney testify as to his or her "expert" opinions also more broadly runs afoul of the general principle that expert testimony is traditionally reserved for scientific testimony.  The U.S. Supreme Court has held that "'[t]he subject of an expert's testimony must be "scientific ... knowledge.'  The adjective 'scientific' implies a grounding in the methods and procedures of science.  Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation."  *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589-590 (1993) (footnote omitted).  Applying *Daubert* here, neither of the defendant experts' opinions are derived as a result of applying the methods and procedures of science to the evidence in this case.  Accordingly, the defendant's expert witnesses should be prohibited from testifying under *Daubert*.

testify as to their legal opinions that the defendant lied under oath and that these lies were material.[4]

## II.    THE COURT SHOULD NOT PERMIT THE DEFENSE EXPERTS TO TESTIFY AS TO THE DEFENDANT'S STATE OF MIND

Additionally, the Court should not permit the defense experts to offer their opinions that, for example, the defendant did not lie when they testified before the federal bankruptcy judges.  Rule 704(b) of the Federal Rules of the Evidence explicitly provides:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. These matters are for the trier of fact alone.

F.R.E. 704(b).  Applying Rule 704(b) here, it is readily apparent that Dow and Jones cannot testify whether or not the defendant lied.  A determination about whether the defendant lied is at its heart a question of whether the defendant knowingly and willfully said one thing when they knew the truth was another. This is the very question the jury must decide in this case, and under Rule 704(b) it is explicitly "for the trier of fact alone."  *See, e.g., United States v. Adams*, 314 Fed.Appx. 633, 649 (5th Cir. 2009) (per curiam) (unpub.) (holding that an IRS'

---

[4] In the event the Court permits the parties to call attorneys to testify as to conclusions of law, the government respectfully requests a brief extension of time in which to file the curricula vitae and opinion summaries of the government's expert witnesses.

agent expert testimony that he had concluded that the defendant had "willfully"

filed a tax form knowing it was "false" as to a "material matter" violated Rule

704(b)'s prohibition on expert testimony as to the defendant's state of mind).

## III.   THE COURT SHOULD NOT ALLOW THE DEFENDANT'S EXPERTS TO OFFER IRRELEVANT OR UNRELIABLE OPINIONS

In addition to being inadmissible legal conclusions and inadmissible

opinions as to the defendant's state of mind, many of the opinions which the

defendant seeks are irrelevant or lack sufficient reliability.  Pursuant to Rule 702 of

the Federal Rules of Evidence, the district court must make initial determinations

under Rule 104(a) that the proffered evidence possesses sufficient evidentiary

reliability to be admissible as scientific, technical, or other specialized knowledge.

*See United States v. Posado*, 57 F.3d 428, 432 (5th Cir. 1995) (citing *Daubert v.*

*Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590-93 (1993)).  Rule 702 further

requires "relevance," that the proffered testimony or evidence "'assist the trier of

fact to understand the evidence or to determine a fact in issue.'"  *Daubert,* 509 U.S.

at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)

(noting that another aspect of relevancy "is whether expert testimony proffered in

the case is sufficiently tied to the facts of the case that it will aid the jury in

resolving a factual dispute")). The *Daubert* analysis thus "serves the important

purpose of allowing the judge to serve as a gatekeeper and screen out evidence that

is unreliable and would have a tendency to confuse or mislead the jury." *United States v. Bahena*, 223 F.3d 797, 809 (8th Cir. 2000).

Applying the rules of relevance to the defense experts' opinions, two opinions in particular stand out as inadmissible.  First, in his attempt to shift the blame in this case by attacking his bankruptcy attorney, the defendant seeks to have Jones opine that the defendant's bankruptcy attorney committed malpractice. *See* Jones Report at 3-11.  Indeed, more than two-thirds of Jones's report concerns this opinion.  But the Indictment in this case does not charge the defendant with anything his lawyer did or filed.  Rather, both charges in this Indictment have been narrowly tailored to focus on what the defendant himself testified to when he was under oath. As a result, what the defendant attempts to achieve through his expert is to escape blame by holding up his lawyer and having his expert attack that lawyer.  But this tactic should not be permitted to succeed.  While it is understandable that the defendant wants to shift the blame to anyone else he can to during this trial, the simple truth is that he and he alone is responsible for what he said on the stand.  Having Jones testify to her opinion as to how the defendant's bankruptcy attorney conducted himself simply creates a trial-within-a-trial, prolongs this case unnecessarily, and most importantly raises issues that are both misleading and not relevant to the criminal charges in this case.

Second, the defendant attempts to have Dow opine that the defendant did not legally own the Pampass Pass house when he testified, and that therefore he did not lie when he testified under oath that he did not rent out the house prior to January 2007. But this "opinion" is dangerously misleading and entirely unreliable. The defendant testified at that same hearing that he rented the house out *after* January 2007. There was nothing factually different from the pre-January 2007 renters compared to the post-January 2007 renters. In both cases, the renters were making out checks to "Core Capital." As such, when he testified that he rented the house out after January 2007 but told the Court that he did not rent it out before that, he lied. More significantly, Dow's opinion entirely ignores the fact that the defendant, Darren Chaker, *is* Core Capitol. Indeed, the defendant wrote out checks to the mortgage company as being from "Chaker d/b/a Core Capitol." Accordingly, permitting Dow to testify that the defendant did not lie is simply misleading and unreliable.

## IV.   THE COURT SHOULD NOT QUALIFY JONES OR DOW AS AN EXPERT WITNESS

Finally, the government respectfully requests that Court decline to qualify both Jones and Dow as expert witnesses. Even though we are less than two weeks away from trial, and despite several extensions provided by the Court for the defendant specifically to prepare its expert disclosures, the defendant continues to

refuse to provide to the government many of the documents Jones says she relied upon in issuing her report.  *See* 3/6/13 E-Mails between counsel (attached as Exhibit C).  Similarly, the defendant has curiously failed to provide the Government with the amount she was compensated in connection with this matter. Perhaps most telling, however, is that the government has been unable to confirm that she interviewed the defendant or his bankruptcy lawyer before issuing her opinions.   In the government's view, if true this issue alone renders her opinions that her bankruptcy attorney committed malpractice, for example, immediately suspect.  More generally, after reviewing her written report, the government remains unclear how Jones reached those opinions based upon the materials reviewed.   The government urges the Court to review Jones' report and determine for itself how she reached her strikingly broad conclusions.

Further, the government remains seriously concerned about whether Jones and Dow are qualified under *Daubert* to be an expert witness at trial before the jury in this case.  Jones's qualifications consists of about 12 years of experience as a bankruptcy attorney and a number of publications.  Dow's qualifications consists of about 17 years of experience as a real estate lawyer.  At least one district court declined to qualify two attorneys based on similar credentials.  *See Cicero v. Bog-Warner Auto, Inc.*, 163 F.Supp.2d 743 (E.D. Mich. 2001).  As for work experience,

14

one of the two attorneys proffered in *Cicero* was an attorney who had practiced in the area of employment law for over twenty years. *Id*. at 748-49. But it declined to qualify the expert on this fact, noting "the Court is not at all sure that time in service leads to expertise." *Id.* The other attorney preferred in *Cicero* was a law professor who had served in that role for about twenty-five years and who had published extensively. *Id*. at 747-48. The district court declined to qualify him also:

> For instance, the court notes that while Mr. Dublin is apparently well published, there is no indication that any articles were peer-reviewed . . . . [W]ithout an indication that Mr. Dubin's articles on ethics and professional responsibility were subject to meaningful peer review by other experts in that area of law, his writings and commentaries are really no more than one lawyer's opinion.

*Id*. at 747-48. Applying the reasoning of *Cicero* to the two attorneys preferred by the defendant in this case, the government remains concerned about whether these two attorneys are sufficiently qualified to testify as experts to a jury. Aside from generally working in the field, these experts' curriculum vitae and reports do not indicate that either has ever written or spoken professionally on any of the specific issues on which they offer their opinions. Similarly, there is no information whether or not opinions have ever been analyzed or critiqued via peer review. Given this absence, the government urges the Court to use its discretion and decline to qualify them as experts in this case.

15

## <u>CONCLUSION</u>

For the reasons stated herein, the United States respectfully requests that the Court grant its motion in limine and exclude both defense expert witnesses from testifying in this case.

Respectfully submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

*/s/ Carolyn Ferko*
CAROLYN FERKO
SHARAD KHANDELWAL
Assistant United States Attorneys
U.S. Attorney's Office, S.D. Texas

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the United States' Motion to Exclude Expert Witnesses  was sent via ECF Transmission on this the 11th day of March, 2013 to counsel for the defendant.

Respectfully submitted,

KENNETH MAGIDSON
UNITED STATES ATTORNEY

*/s/ Carolyn Ferko*
CAROLYN FERKO
Assistant United States Attorney

17