UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA vs. DARREN CHAKER | No. H-12-CR-168 |

*Mr. Chaker's Response to
The Government's Motion in Limine
to Exclude Expert Witnesses*

Judge Atlas:

Legally, this case is remarkably simple—so simple that it can be disposed of with Mr. Chaker's previously filed *Motion to Dismiss* (Document 82). Factually, we have the best imaginable evidence of the conduct at issue: two court reporters' transcripts.

**Count One**

On Count One, the first question is whether the Government can prove that Mr. Chaker made the statement that it has alleged—that he "represented to the [c]ourt that the home Pampass Pass was never leased out prior to January 2007." The transcript of the March 26, 2007 hearing answers this question: he did not make that representation. The inquiry should end there.

**Count Two**

On Count Two, the first question is whether the Government can prove that Mr. Chaker testified, "if I was asked the question if it's rented or who owns it, yeah, absolutely, I would have said that's Core Capital"; he did.

The second question is whether this statement is definite enough to support criminal liability; it is not. If it were, the third question would be whether the statement was false. A conditional statement cannot be said to be false unless the condition is met. Because Mr. Chaker was not asked "the question if it's rented or who owns it," his assertion that he would—in that circumstance—have said "that's Core Capital" cannot be proven false. (If it could be proven false, the fourth question would be whether Mr. Chaker knew it to be false; from his protestation of lack of memory and his request to see the transcript it is clear that he did not.)

**The Government's Needless Complication**

The Government maintains that "both charges in this Indictment have been narrowly tailored to focus on what the defendant himself testified to when he was under oath." Yet at every turning the Government tries to broaden the inquiry. For example:

1. The indictment is mostly extraneous allegations.

2. The Government's 404(b) notice, Document 39, lists multiple other acts that the Government intends to prove at trial.

3. Even in its *Motion in Limine* the Government cannot refrain from arguing that:

    a. "[T]he defendant decided to stop making mortgage payments" (Doc. 84 p. 2);

    b. "[T]he defendant filed a *second* bankruptcy petition in March 2007" (Doc. 84 p. 3);

    c. "During his sworn testimony, the defendant testified that the Pampass Pass house had been rented out '[s]ince the first week of January [2007], just after I filed bankruptcy'" (Doc. 84 p.3, edits in original);

  d. "Judge Bohm eventually denied the defendant's bankruptcy motion to extend the stay, finding that the case was not filed in good faith and that either the defendant had falsely testified at the hearing or [the defendant had] submitted false filings" (Doc. 84 pp. 3–4); and

  e. So forth.

**Literal Truth is a Defense**

Mr. Chaker's experts will not testify to ultimate issues in this case. If the inquiry does not end with the fact that Mr. Chaker did not make the representation that the Government alleges in Count One, then there is the risk that a jury will convict him of making a statement other than the one that he is charged with, if it believes that statement to be false.[1] In the face of this risk, the literal truth of what he said would become very important.

Before it sets about proving that Mr. Chaker believed the statement to be untrue, the government must prove that the statement was untrue. The literal truth of Mr. Chaker's statement is not a matter of the defendant's state of mind.

A witness cannot testify to what Mr. Chaker believed, but a witness can testify to who owned the Pampass Pass home (a fact, but a fact that can only be determined with reference to the applicable law), and whether (given that fact and the fact that the owner of the Pampass Pass home rented it before January 2007) Mr. Chaker rented the home before January 2007.

Who owned the home is a matter of fact and law—there was a deed executed but not filed, and after the deed was executed, all of the business of the Pampass Pass house (lawn care, pest extermination, mortgage payments, plumbing, leases, and so forth) was conducted by Core Capital LLC.

---

[1] In *Bronston v. United States*, 409 U.S. 352 (1973), the Court held that the federal perjury statute did not allow prosecutions for perjury because of a witness's literally true but unresponsive answers to questions, even where the witness intended the questioner to be misled by the answers, and even where the answers, by negative implication, were false.

**A Government Misrepresentation**

In its *Motion in Limine* the Government asserts that Mr. Chaker "transferred the house to a company he created and ran called Core Capital, LLP." (Doc. 84 p. 2.) It is true that Mr. Chaker transferred the house to Core Capital, LLC (and counsel trusts that the Government will not now argue otherwise) but in fact Core Capital, LLC was created by a Nevada trust, Platinum Holdings Group Trust, and not by Mr. Chaker.

**Mr. Jones's Malpractice**

Mr. Chaker's bankruptcy lawyer, Mr. Jones, filed the second bankruptcy without Mr. Chaker's permission and without his signature. The Government has included Mr. Jones on its witness list.

If Mr. Jones testifies to his representation of Mr. Chaker, implicit (if not explicit) in his testimony will be the notion that his own conduct was proper. To the contrary, Mr. Jones filed the first bankruptcy with incorrect schedules after Mr. Chaker had given him written notice that Mr. Chaker did not own any of the property at issue.

Mr. Jones then filed the second bankruptcy without Mr. Chaker's knowledge, without Mr. Chaker's signature, and after the same written notice from Mr. Chaker that Core Capital owned all of the property involved in the bankruptcy.

Mr. Jones stood by in court while Mr. Chaker testified to what Mr. Chaker believed to be the truth. If Mr. Chaker's claim that he had not rented the house before January 2007 was not true, Mr. Jones had a duty to correct the record. He did not do so.

Then, when the second bankruptcy was dismissed, Mr. Jones filed a third bankruptcy correctly alleging that the house belonged to Core Capital, LLC—a fact that had been documented in his file since the first bankruptcy was filed in December 2006.

Mr. Chaker would only attack Mr. Jones's conduct if the Government implied that Mr. Jones's conduct was correct.

>Mr. Chaker would rather not go down that road, but if the Government proffers as a witness Mr. Chaker's former lawyer, who has an interest in making himself look better by making his client look bad, or if the Government posits that the documents electronically filed by Mr. Jones are attributable to Mr. Jones, then Mr. Chaker is prepared to respond.

**The Government Has Failed to Comply With Rule 16 or this Court's Scheduling Order**

>The government had an opportunity to give notice of its expert witnesses for its case in chief. It failed to do so, and this Court ruled that it could not provide expert testimony in its case in chief. Then it tried to cover its failure by claiming that testimony by lawyers and U.S. Trustees about bankruptcy law was "lay" testimony.

>Then the Government had an opportunity to notice expert witnesses (that is, provide the discovery required by Rule 16) for its rebuttal case. The deadline has passed and the Government has failed to do that as well.

>Despite its tongue-in-cheek statement in the *Motion in Limine* that it wishes to call various expert witnesses "for either its case-in-chief or its rebuttal case….to testify as to their legal opinions that the defendant lied under oath and that these lies were material," the Government is foreclosed from offering *any* testimony under Federal Rule of Evidence 702 at any point in the trial.

**Reciprocal Discovery**

>The Government complains that the defendant "continues to refuse to provide to the government many of the documents Jones says she relied upon in issuing her report." This is discovery not required by Rule 16.

>Rule 16 requires "a written summary" of expert testimony that includes "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Mr. Chaker provided this timely to the Government. Rule 16 does not require production of the materials reviewed, nor does any other rule. Indeed, Rule 705 of the Federal Rules of Evidence spe-

cifically provides that an expert may be required to disclose the facts or data underlying his opinion only "on cross-examination."

Defense counsel asked the Government what authority required pretrial production of the documents underlying Ms. Jones's opinion, and the Government provided no legal authority. If the Government is able to cite some rule or statute that requires it, or if the Court (after, it is hoped, ruling on Mr. Chaker's *Urgent Motion for Protective Order*) orders their production, Mr. Chaker will produce them.

The Government also complains that Mr. Chaker has "curiously failed to provide the Government with the amount [Ms. Jones] was compensated in connection with this matter." The curious thing about this is that the Government thinks that it is entitled to that information when Rule 16 does not require it.

## A Government Misrepresentation[2]

The Government claims that Mr. Chaker "testified at the [March 26, 2007] hearing that *he* had rented the house out ***after*** January 2007" (Document 84 p. 13, "after" emphasized in original, but not "he"). The government's assertion is incorrect. Here is the relevant exchange from the transcript of the March 26, 2007 hearing:

> Q. How long has the property been rented?
> 
> A. Since the first week of January; just after I filed bankruptcy.

There is no assertion here that Mr. Chaker had rented the house out, but only that it was rented out. Mr. Chaker was asked the question in the passive voice, and did not imply the first person in his answer.

Mr. Chaker is not charged with lying in that statement, but if he were it would be literally true—the property had been rented (to the current ten-

---

[2] It is ironic in this case, which hinges, per *Bronston*, on exactly what was asked and exactly what answer was given, that the Government is so sloppy with the facts.

ant) since the first week of January—just as his statement that "he" had not rented the property before January 2007 was literally true.

**Judges as Expert Witnesses**

It would be improper for a judge to contribute the weight of his office to the Government by acting as an expert witness in a criminal case.

Judge Bohm's opinion was this: "So, I've either got false testimony today or I've got false testimony on Schedule G that was filed." Judge Bohm is, as it happens, correct: Schedule G was incorrect. But Mr. Chaker is not charged with falsifying Schedule G, and if he were he would have a defense: that he had told Mr. Jones in writing about the lease, and his lawyer had filed the incorrect papers in the second bankruptcy without Mr. Chaker's review, his, signature, or even his knowledge.

Judge Isgur's opinion, "I think you sat up her and lied about everything," may have been based on his having taken offense rather than an objective consideration of the facts. In any case, Mr. Chaker is not charged with lying about everything; he is only charged (in Count Two, which originated before Judge Isgur) with lying when he said, "if I was asked the question if it's rented or who owns it, yeah, absolutely, I would have said that's Core Capital"—not the sort of definitive statement that can support a criminal conviction, and not provably false.

**Trustees as Expert Witnesses**

The Government has the burden of proving materiality beyond a reasonable doubt. *See U.S. v. Spurlin*, 664 F.3d 954, 962 (5th Cir. 2011)). How it will do so without an expert witness to explain the materiality to the jury is a puzzlement. If the Government had provided the discovery required by Rule 16 and this Court's Order, the U.S. Trustees might be able to provide opinions under Rule 702 of the materiality of any misstatements.

But it should not be the Court's concern that the Government has failed to prepare its case.

### More Government Misrepresentations

The Government claims that Mr. Chaker "*is* Core Capitol [sic]" (Document 84 p. 13, bold and italic in original). This assertion is contrary to the facts and the law. An LLC is different than an individual; Core Capital LLC is, by definition, not Mr. Chaker. This statement of the law and its application to the facts, which should be uncontroversial, highlights the need for Mr. Dow's testimony.

The Government also alleges that Mr. Chaker "was involved in a lawsuit with one of his former pre-January 2007 tenants at the exact time he testified under oath before Judge Bohm." The style of this lawsuit? *Core Capital, LLC v. Breaux*.

### Still Another Government Misrepresentation?

In support of its allegation that Mr. Chaker "*is*" Core Capital, the Government alleges that Mr. Chaker "wrote out checks to the mortgage company as being from 'Chaker d/b/a Core Capitol [sic].'" This is news to defense counsel; counsel doubts that it is true, but even if it were true it would not prove that Mr. Chaker is the LLC.

### The Court Could Decide

All that being said, attached as Exhibit A is the report of Sanford "Sandy" Dow; attached as Exhibit B is the report of Erin Jones.

Mr. Chaker concedes that some of their opinions may be admissible and some may not, and is not averse to the Court ruling before trial which portions, if any, the Court will admit, may admit, and will exclude.

### Prayer

Other than that, please deny the Government's motion in its entirety.

### Certificate of Service

A copy of this response will be delivered to the Government via ECF.

Thank you,

_____

Mark Bennett
SBN 00792970
Bennett & Bennett
735 Oxford Street
Houston, Texas 77007
713.224.1747