# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-12-168 |
| | § | |
| DARREN DAVID CHAKER | § | |

## MEMORANDUM AND ORDER

On April 18, 2013, Defendant Darren David Chaker through trial counsel filed a Second Amended Motion for Acquittal or New Trial [Doc. # 193] ("New Trial Motion"), to which the Government responded [Doc. # 201] ("Response"). Shortly thereafter, upon Chaker's request [Doc. # 195], the Court appointed new defense counsel [Doc. # 204]. New counsel filed a Reply [Doc. # 213] and raised a new issue, that Chaker's waiver of a jury trial was invalid. The Government submitted a Surreply [Doc. # 221] that attaches Chaker's written waiver of jury trial. The Court, having considered the parties' briefing, related matters of record, and applicable legal authorities, holds that Defendant's Motion should be **denied**.

## I. BACKGROUND AND LEGAL STANDARDS

On April 4, 2013, after a five-day bench trial, the Court found Chaker guilty of bankruptcy fraud under 18 U.S.C. § 157(3) (Count One of the Superseding

Indictment) and not guilty making a false statement under 18 U.S.C. § 152(3) (Count Two of the Superseding Indictment). *See* Hearing Minutes and Order, April 4, 2013 [Doc. # 139].

Chaker moves for an acquittal or for a new trial on Count One, invoking Rules 29 and 33 of the Federal Rules of Criminal Procedure. Rule 29 provides for a judgment of acquittal when "the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). "In determining if there was sufficient evidence to support a conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Xu*, 599 F.3d 452, 453 (5th Cir. 2010) (internal quotation marks and citations omitted).

Rule 33 provides for a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33. "In [the Fifth] Circuit, the generally accepted standard is that a new trial ordinarily should not be granted unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict. A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (internal quotation marks and citations omitted).

Chaker raises four basic arguments in support of his Motion. Each will be

addressed in turn.

## II. DISCUSSION

### A. Constructive Amendment of Indictment

Chaker first argues that acquittal or new trial is required because the Court constructively amended the indictment against him, and the scheme alleged by the Grand Jury remains unproven. Count One of the Superseding Indictment [Doc. # 26] alleges that Chaker violated 18 U.S.C. § 157(3).[1] Chaker's Motion refers to the allegations in paragraphs 22 through 26 of the Superseding Indictment, which recite that "[i]t was a part of the scheme and artifice to defraud" that Chaker filed a second Chapter 13 proceeding to get a 30-day automatic stay (¶ 22); he signed and caused to be filed false and misleading statements and schedules (¶ 23); he concealed his association with Core Capital (¶ 24); he failed to attend creditors' meetings (¶ 25); and

---

[1] Section 157 of Title 18 of the United States Code provides:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so –
>
> * * * *
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or both.

he concealed rental income from real estate located at Pampass Pass, Houston, Texas, by failing to disclose the funds in bankruptcy schedules and statements (¶ 26).[2] Chaker points out that these paragraphs do not reference Chaker's testimony at a hearing in Bankruptcy Court on March 26, 2007. Chaker argues that the Court's findings "found another scheme entirely, beginning years earlier and including very different conduct." Motion, at 3. He cites the Court's comments that he began a scheme in 2005 by which he sought to put certain properties, including the one at Pampass Pass, under separate legal ownership, then "filed bankruptcy in his own name to keep the Pampass Pass property, but failed to disclose the past rents as his own." *See* Verdict Transcript [Doc. # 217], at 17-19.

Chaker's claim that the Court constructively amended the indictment is unfounded. A constructive amendment of an indictment "may occur when the trial court through its instructions and facts it permits in evidence, allows proof of an essential element of the crime on an alternative basis provided by the statute but ***not charged in the indictment***." *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012) (emphasis added) (internal quotation marks and citation omitted).

The Court's findings related most particularly to the conduct alleged in the

---

[2]   Paragraphs 22 through 26, on which Chaker relies, constitute the "Manner and Means of the Scheme to Defraud" section of the Superseding Indictment, which is background for the charge set forth in the subsequent section entitled "Execution of the Scheme and Artifice."

"Execution of the Scheme and Artifice" section of the Superseding Indictment, paragraph 27, wherein the grand jury charged that Chaker executed a scheme to defraud, in violation of 18 U.S.C. § 157(3), on March 26, 2007, by making a false and fraudulent representation in testimony during an evidentiary hearing in Bankruptcy Court that the Pampass Pass property was never leased out prior to January 2007. The Government met its burden to prove this theory beyond a reasonable doubt. To be found guilty of bankruptcy fraud a person must be shown to have "devised or intend[ed] to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so . . . [made] a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11" of the United States Code. 18 U.S.C. § 157(3); *see also United States v. Persfull*, 660 F.3d 286, 294 (7th Cir. 2011). "Because direct evidence of a defendant's fraudulent intent is typically not available, specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself . . . ." *Persfull*, 660 F.3d at 294 (internal quotation marks, citation, and alteration omitted).

The Court found beyond a reasonable doubt, after consideration of all the evidence in the trial record, that Defendant was guilty of bankruptcy fraud as charged in Count One. The Court noted, *inter alia*, that (1) on March 26, 2007, Chaker had

an equitable or beneficial interest in the Pampass Pass property; (2) Chaker knew he had interest in the property, even if he personally could not define it legally; (3) Chaker engaged in a scheme to defraud the Bankruptcy Court and his creditor Saxon Mortgage Services, Inc. ("Saxon"), the entity representing the holder of the Pampass Pass mortgage; (4) on March 26, 2007, Chaker intentionally testified falsely under oath when he denied that the property was "rented out" prior to his personal bankruptcies; and (5) the false testimony was material. Verdict Transcript, at 4-5. The Court's findings did not include "an essential element of the crime on an alternative basis provided by the statute but not charged in the indictment." *See Jara-Favela*, 686 F.3d at 299. No constructive amendment occurred.

Chaker alternatively argues that he relied on the allegations in the Superseding Indictment when preparing his defense and deciding whether to plead guilty. He asserts that, if he had been aware of the "different scheme" relied upon by the Court, he "might" have made a different plea decision and his counsel "certainly" would have tried the case differently. The premise of this argument is belied by the clear allegations in paragraph 27 of the Superseding Indictment. Chaker was given ample notice of the crime charged through the allegations in the "Introduction," as well as succeeding paragraphs, *inter alia*, the "Manner and Means of the Scheme to Defraud" and "Execution of the Scheme and Artifice." His argument is rejected, and he is not

entitled to relief under a theory of constructive amendment to the indictment.

**B.     Insufficient Evidence**

Chaker argues that six findings by the Court are unsupported by the evidence. Specifically, he contends that there is insufficient evidence to support:

(1)   the finding that Chaker testified falsely on March 26, 2007;

(2)   the finding that Del Nero is a fake name;

(3)   the finding that it was "inconceivable" that Chaker's lawyer had not communicated to Chaker the purpose of the hearing before putting him on the stand;

(4)   the finding that Chaker intended to defraud an identifiable victim, *i.e.*, Saxon or the Bankruptcy Court;

(5)   the finding that it was "likely" that Chaker understood certain provisions of the Deed of Trust; and

(6)   the finding that Chaker intended to defraud when he testified that he had not rented out the house before his bankruptcy.

These arguments lack merit. Chaker's counsel presented these points expressly or implicitly during trial and in closing argument. The Court considered these contentions in reaching its verdict. Further, the Court has reconsidered Chaker's arguments in light of the evidence adduced at trial and again finds his contentions unpersuasive. Finally, it is noted that certain of the findings about which Chaker here complains (such as whether "Del Nero" was a false name, that it was "inconceivable" that Chaker's lawyer had not communicated to Chaker the purpose of the hearing

before putting him on the stand on March 26, 2007, in bankruptcy court, and that it was "likely" that Chaker understood certain provisions of the Deed of Trust) are mere background to the Court's ultimate finding that Chaker committed the bankruptcy fraud charged in Count One. The Court reaffirms its finding that Chaker defrauded the bankruptcy court and/or Saxon by lying at a hearing on March 26, 2007, as charged. Chaker's insufficiency of the evidence argument is rejected.

### C. The "Truth" Defense

Chaker argues that his testimony in the bankruptcy hearing on March 26, 2007, that "he" did not rent out the property was, as a matter of law, a true statement. This argument was thoroughly argued by the defense at trial, and the Court considered it in light of all the evidence at trial. The Court maintains its trial ruling. This contention does not warrant relief under Rule 29 or Rule 33.

### D. Jury Trial Waiver

Chaker, through his new attorney, asserts in his Reply that a new trial is required because the record does not reflect a written waiver of his right to trial by jury. In particular, Chaker argues that there is no signed waiver of jury trial in the pretrial record, that the Court did not conduct an examination on the record to ascertain Chaker's capacity to waive his jury trial right, and therefore the Court's Order approving the waiver is a "nullity." Reply, at 2-7 (citing *inter alia* FED. R.

CRIM. P. 23(a); *Taylor v. Illinois*, 484 U.S. 400 (1988); *United States v. Mendez,* 102 F.3d 126 (5th Cir. 1996); *United States v. Saadya*, 750 F.2d 1419 (9th Cir. 1985)). These arguments are unavailing.

The Constitution guarantees criminal defendants the right to a trial by jury for serious offenses. U.S. Const., art. III, § 2, cl. 3; *id.,* amend. VI. However, the Supreme Court has recognized that defendants have the right to waive a jury trial. *Patton v. United States*, 281 U.S. 276, 297-99 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970)); *see United States v. Gordon*, 712 F.2d 110, 115 (5th Cir. 1983); *Scott v. Cain*, 364 F. App'x 850, 853 (5th Cir. 2010). Rule 23(a) provides that a criminal defendant entitled to a jury trial must be tried by a jury unless three conditions are met:

(1) the defendant waives a jury trial in writing,

(2) the Government consents, and

(3) the court approves.

FED. R. CRIM. P. 23(a). The Sixth Amendment requires the defendant's waiver to be express and intelligent. *Patton*, 281 U.S. at 312-13; *United States v. Igbinosun*, 528 F.3d 387, 390 (5th Cir. 2008).

A written waiver provides the best evidence of a defendant's express consent. *Saadya*, 750 F.2d at 1420. When the defendant signs a written waiver, the court is not

required to orally examine the defendant to determine whether the waiver was intelligently made. *Gordon*, 712 F.2d at 115; *United States v. Tobias*, 662 F.2d 381, 387 (5th Cir. 1981); *see also United States v. Mitchell*, 30 F.3d 1493, at *3 (5th Cir. July 21, 1994). "The importance of a written waiver cannot be understated. More than simply memorializing the defendant's consent, the presence of a writing 'impress[es] the defendant with the gravity of the right he is about to relinquish.'" *Mitchell*, 30 F.3d 1493, at *3 (quoting 8A MOORE'S FED. PRAC. ¶ 23.03[2][b], at 23-14 (1994)).

The defendant bears the burden to establish that a jury trial waiver is not valid. *Adams v. United States* ex rel. *McCann*, 317 U.S. 269, 281 (1942). The question whether waiver is properly "intelligent, competent, [and] self-protecting . . . must depend upon the unique circumstances of each case." *Id*. at 278; *see also Scott*, 364 F. App'x at 853. Absent a claim of prejudice by the defendant, it is assumed that the waiver was knowingly made. *Igbinosun*, 528 F.3d at 390; *see also United States v. Madden*, 220 F. App'x 290, 292 (5th Cir. 2007); *Mitchell*, 30 F.3d 1493, at *3; *Gordon*, 712 F.3d at 115; *Tobias*, 662 F.2d at 387.

Chaker waived his jury trial right in writing with the assistance of counsel. On March 17, 2013, approximately a week before trial, Chaker's counsel sent an email to the Government requesting an agreement to waive the jury. Exhibit A to Surreply.

The Government agreed, and the next day Chaker's counsel emailed to the Government a written jury trial waiver signed by both Chaker personally and his counsel. Exhibit B to Surreply. Government counsel added his signature and returned the document to defense counsel. Exhibit C to Surreply. Shortly thereafter, defense counsel filed his Motion to Approve Jury Waiver [Doc. # 104] in the Court's docket. The Court promptly granted the motion. Order [Doc. # 105], dated Mar. 19, 2013. Apparently through inadvertence, no copy of the written waiver was filed with defense counsel's motion through the Court's electronic filing system, despite counsel's representation in the text of the motion that the written waiver was attached.[3]

The Court did not inquire of Chaker personally about his decision to waive a jury. Rather, at the beginning of the March 21 pretrial conference, with Chaker personally present, the Court noted on the record that it had granted Defendant's

---

[3] To the extent Chaker argues that the Government's submission of the written waiver post-trial is an improper attempt to reconstruct the record, the doctrine is inapplicable in this case. A court cannot, post-trial, "reconstruct the record" to establish a waiver that did not exist pre-trial, *United States v. Page*, 661 F.2d 1080, 1082 (5th Cir. 1981), but that is not the circumstance here. On appeal in *Page*, the Fifth Circuit held that "*what in fact went on* [in the trial court] may be settled and placed of record pursuant to [Appellate] Rule 10(e) and whatever proceedings are necessary to that end are permissible." *Id.* "New proceedings of a substantive nature, designed to supply what *might have been done but was not*, are beyond the reach of the rule." *Id.* In the case at bar, the Government has added to the record the pretrial, fully executed written jury waiver that was in existence before the Court's approval of the waiver and the trial, but was inadvertently omitted from Defendant's motion. *See United States v. Smith*, 493 F.2d 906 (5th Cir. 1974). There is no post-judgment augmentation of the record about events that are disputed or uncertain.

agreed motion to waive a jury and, therefore, it was unnecessary to address any issues pertaining to the proposed jury instructions. Chaker, who was present in person in the courtroom, did not register, either verbally or non-verbally, any objection to the Court's statement.[4] The bench trial commenced on March 26, 2013, and was concluded the following week.

Chaker does not claim prejudice due to the absence of an on-the-record colloquy with the Court. *See Igbinosun*, 528 F.3d at 390-91. He does not argue that he did not understand his right to a jury versus a trial to the Court, nor does he argue that he did not sign the waiver or did not intend at the time to give up the right to a jury. He does not argue that he was forced to waive that right. Moreover, no facts have been presented to the Court that might support such arguments. Chaker has not submitted an affidavit. Indeed, Chaker is a United States citizen who speaks English articulately, is educated, is fully literate, is familiar with real estate and many business

---

[4] The Court is to consider the defendant's mental capacity when considering a request to waive a jury. *See* BENCH BOOK FOR U.S. DISTRICT COURT JUDGES, Fed. Jud. Ctr. (6th ed.) (Mar. 2013). After observation of Defendant and defense counsel's dealings with him during the various conferences held in this case, after consideration of the many motions and matters raised by his counsel, and with an understanding of the nature of the charges in the case, it never occurred to the Court that Chaker was in any way confused or that he disagreed at the time with the strategy he and counsel had chosen. There was no indication that Chaker had any impairment that would prevent his understanding or present obstacles for defense counsel's communication with him on this subject.

matters, and can perform legal research.[5] He clearly understood the basic difference between a trial before a single judge versus a jury of lay people selected from a group. *See generally and compare Page*, 661 F.2d at 1082-83 *with Mendez*, 102 F.3d at 129-30.

Moreover, Chaker was very involved with his attorney in constructing his defense and seemed knowledgeable about the defenses he sought to assert. On April

---

[5] Chaker's especially high functioning capacity is evident in numerous respects in the record. First, he has some legal experience and apparently knows how to do sophisticated legal research. Indeed, he represented to lenders when he obtained one or more of the loans on the houses he purchased that he worked for his sister as a "legal assistant." *See, e.g.*, Mar. 27, 2013 Trial Testimony of James Hawkins; GX 8C (Employment Verification Form for Loan Application); GX 9B (Letter from Chaker to "To Whom It May Concern," dated Aug. 19, 2004, claiming he was "setting up one of our new law offices in Las Vegas, which I will be working out of . . . . At this time I do most of my work and research over the internet, which allows me to work out of my home."); GX 8A (Chaker reported he had been a "legal assistant" for five years, as of Sept. 16, 2004).

Second, Chaker demonstrated a detailed comprehension of legal matters. *See, e.g.*, GX 5M (Chaker "Memo" to Hon. Marvin Isgur, Oct. 5, 2007, articulately discussing legal principles); DX 51, at 25 of 101 *et seq.* (Confidential Memo from Chaker to Philip Galyen, Esq., dated Sept. 23, 2007 (containing detailed citations to case law and Rules of Disciplinary Rules of Professional Conduct); DX 51, at 72-73 of 101 (Confidential Memo from Chaker to Fred Jones, Esq., July 28, 2007). Indeed, Chaker owned law books and asked James Breaux to allow them to remain in the home Breaux leased. *See* Testimony of James N. Breaux, Mar. 26, 2013; GX 10B, at Bates Nos. 20-21 (Letter from Chaker to James N. Breaux, Mar. 18, 2006, regarding alleged damage by Breaux to the property in issue that Breaux leased, which Chaker did not disclose to the bankruptcy court). Finally, exhibiting a high degree of legal sophistication, all Chaker's emails contain a "Confidentiality Notice" stating that the message, "along with any attachments and/or replies thereto, are covered by covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged . . . ."

2, 2013, after the close of the evidence but before announcement of the verdict, Chaker expressed articulately on the record in an *ex parte* administrative conference that he was very satisfied with his lawyer, could not have asked for a better defense, and that the witnesses he wanted had been called. The written and oral record demonstrates that Chaker's jury trial waiver was voluntarily, knowingly and intelligently made, and Chaker was mentally competent to make the jury waiver decision. *See Igbinosun*, 528 F.3d at 390.[6]

---

[6] On May 6, 2013, post-trial, defense counsel filed a "Sealed Ex Parte Motion to Withdraw as Counsel and For the Court to Appoint Fresh Counsel" [Doc. # 195], to which counsel attached a 16-page letter written by Chaker to the Court, dated May 5, 2013, declaring that there was an irreconcilable conflict between him and his attorney and asking for appointment of a different attorney. Chaker, among other points, urges that the jury waiver he signed is invalid for various reasons and that he was "prejudiced" by the waiver. This letter was filed under seal and has not been made part of the record for purposes of the New Trial Motion. The letter does not appear to have been disclosed to the Government. It is inappropriate for the Court to rely on the letter to grant Chaker relief here. Further, a criminal defendant is not entitled to represent himself *pro se* at the same time as he has counsel. *United States v. Ogbonna*, 184 F.3d 447, 449 (5th Cir. 1999); *see Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996) ("[T]here is no constitutional right to hybrid representation [on appeal]."). Chaker has counsel and the Court relies on current (new) counsel's informed and strategic decisions as to what should be in the New Trial Record.

Nevertheless, because the Court is aware of the letter, the Court concludes it should ascertain if the letter contains matters that suggest a different outcome or further proceedings on the New Trial Motion. After careful consideration, the Court concludes that the letter does not contain information or argument that alters the Court's decision that Chaker is plainly mentally competent and that his jury waiver was valid, as voluntary, knowing, and intelligent. Chaker asserts in several places that the jury trial waiver was "invalid," but does not reveal anything that counsel or the Court allegedly did or failed to do prejudiced him so as to render the waiver invalid under applicable standards. Instead, in the letter, Chaker makes extensive

(continued...)

Finally, Chaker's decision to waive his jury trial right was logical. There were many aspects of the case and his defenses that members of a lay jury could well have found unappealing. For instance, Chaker's defenses to the criminal charges are technical; they involve multiple unusual legal entities he created to shield public disclosure of his connections to certain real estate, while using the real estate proceeds for his personal benefit. The business transactions and dealings with tax and estate lawyers involved various areas of bankruptcy and trust law. Chaker had different, and sometimes multiple, bank accounts and occasionally used an alternate name (Del Nero). He sought by repeated bankruptcy filings to discharge debts admittedly owed. He incurred various seemingly unnecessary personal expenses around the time of his bankruptcy filings. He filed suit against a tenant in one of his several investment properties. While none of these actions *per se* are illegal, they are not within the common experience of many lay people. It is reasonable for the defense to have had concerns that Chaker's positions would be unappealing to jurors. For all these reasons, the Court rejects Chaker's argument that his written waiver of the right to a

---

[6] (...continued)
legal and factual argument about his trial counsel's advice on substantive issues, and about the legal and factual merits of the case, again demonstrating Chaker's personal familiarity with how to do legal research, with the law, and with legal process. The letter also demonstrates Chaker's deep involvement in his defense. While Chaker also questions certain of trial counsel's strategic decisions at or before trial, he seems to ignore the fact that trial counsel timely pursued most, if not all, of the issues Chaker discusses. The letter does not raise issues that invalidate his jury waiver.

jury trial is invalid.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, it is hereby

**ORDERED** that Defendant's Second Amended Motion for Acquittal or New Trial [Doc. # 193] is **DENIED**.

SIGNED at Houston, Texas, this **3rd** day of **September, 2013.**

_____
Nancy F. Atlas
United States District Judge